# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| SUSAN COTTINGHAM, on behalf of her minor child, K.C., | * * * | No. 15-1291 |
| Petitioner, | * * | Special Master Christian J. Moran |
| v. | * * | Filed: April 20, 2017 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * | Attorneys' fees and costs; reasonable basis; reconsideration |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * *

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
Ann D. Martin, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION DENYING MOTION FOR RECONSIDERATION OF DECISION DENYING ATTORNEYS' FEES AND COSTS[1]**

Susan Cottingham maintained a claim in the Vaccine Program for approximately one year until her case was dismissed. Decision, 2016 WL 6575170 (Oct. 13, 2016). She then sought her attorneys' fees and costs, but was denied because she did not establish eligibility. Fees Decision, issued Mar. 30, 2017. She is now requesting reconsideration of that Fees Decision. For the reasons explained below, Ms. Cottingham has not satisfied the standards for reconsideration. Her motion, therefore, is DENIED.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

**Background**

Ms. Cottingham alleged that a human papillomavirus (HPV) vaccine, which was administered on July 5, 2012, harmed her daughter, K.C. The petition set forth three discrete injuries: headaches, allegedly starting in November 2012; two instances of fainting in March and May 2013; and menstrual problems, allegedly starting in the latter part of 2013. Pet., filed Oct. 30, 2015.

Ms. Cottingham first communicated with her current attorney, Andrew Downing, in May 2015, nearly five months before the case was filed in court. Mr. Downing's staff collected most (but not all) of the medical records within a few months. For example, the law firm received medical records from Vestavia Pediatrics by June 23, 2015.

Mr. Downing submitted the petition on October 30, 2015. Ms. Cottingham maintained in it that K.C. first experienced symptoms of a condition the HPV vaccine caused on November 1, 2012. Therefore, in Mr. Downing's view, the 36-month statute of limitations expired on November 1, 2015. Pet'r's Mot. for Attorneys' Fees and Costs, filed Oct. 26, 2016, at 5.

At least five months after he filed the petition, Mr. Downing consulted two experts, Dr. Nemechek and Dr. Lee. Neither provided a helpful opinion. See Pet'r's Mot. for Attorneys' Fees and Costs at 6-7.

On October 6, 2016, Ms. Cottingham filed a motion for a decision. The ensuing October 13, 2016 decision dismissed Ms. Cottingham's case due to a lack of evidence.

On October 26, 2016, Ms. Cottingham filed the motion for attorneys' fees and costs that the March 31, 2017 Fees Decision resolved. The Fees Decision noted that the parties disputed whether Ms. Cottingham satisfied the reasonable basis standard. Ms. Cottingham had argued that the press of the statute of limitations entitled her to a more lenient standard. In contrast, the Secretary had argued that a looming expiration of the statute of limitations should not affect the reasonable basis analysis.

The March 31, 2017 Fees Decision denied Ms. Cottingham's motion for an award of attorneys' fees and costs under different standards for reasonable basis. Pursuant to an evidence-based standard, the relevant question is whether any evidence supported the three claims asserted in the petition. The Fees Decision

2

found that no evidence, except a temporal sequence of events, supported the allegations in the petition. The Fees Decision additionally analyzed the reasonable basis using the broader totality of the circumstances test also applied in disputes over reasonable basis. The Fees Decision found that if Mr. Downing had acted more diligently in reviewing the material that he possessed before filing the petition, he would have realized that the petition lacked a reasonable basis before he filed the case. Each of the petition's three claims faced significant challenges because the allegations in the petition were not consistent with the medical records, particularly the records from Vestavia Pediatrics, and the temporal relationship between the vaccination and the onset of the illnesses seemed attenuated. Thus, under either the evidence-based standard or the totality of the circumstances standard, Ms. Cottingham did not establish the reasonable basis for any of the three claims in her petition. Without this predicate showing, Ms. Cottingham could not be awarded attorneys' fees and costs.

On April 7, 2017, Ms. Cottingham filed the pending motion for reconsideration pursuant to Vaccine Rule 10(e). She presents essentially two arguments: (1) the only proper test for evaluating reasonable basis is the totality of the circumstances, and (2) under the totality of the circumstances test, Ms. Cottingham's petition was supported by a reasonable basis.[2]

## Standards for Adjudication

Vaccine Rule 10(e) affords parties in the Vaccine Program the opportunity to seek reconsideration. The movant must establish that reconsideration is warranted "in the interest of justice." Vaccine Rule 10(e)(3); see also Krakow v. Sec'y of Health & Human Servs., No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Nov. 12, 2010). Motions for reconsideration are not intended to serve as vehicles for the submission of evidence that could have been presented earlier. See Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (interpreting Rule 59(a)(1) of the Court of Federal Claims); Golden Bridge Technology, Inc. v. Apple, Inc., 758 F.3d 1362, 1369 (Fed. Cir. 2014) (following Third Circuit law); Cedillo v. Sec'y of Health & Human Servs., 617 F.3d 1328, 1348 (Fed. Cir. 2010).

---

[2] The motion for reconsideration actually is divided into five headings. However, the headings relate to one of the two arguments summarized in the text above.

3

## Analysis

The analysis below first addresses petitioner's argument that the proper standard for analyzing reasonable basis is the totality of the circumstances. It goes on to address the argument that Ms. Cottingham's petition was supported by reasonable basis under a totality of the circumstances standard.

### I.   The Proper Standard for Analyzing Reasonable Basis

Ms. Cottingham's first point is more an observation, than a true argument. Ms. Cottingham states "Special Masters overwhelmingly apply a reasonable basis analysis that considers both the conduct of a petitioner's attorney and a looming statute of limitations." Pet'r's Mot. for Recons. at 2. Ms. Cottingham then cites a series of cases illustrating her observation. She concludes that the undersigned special master "has ignored a substantial amount of persuasive authority." Id. at 5.

Ms. Cottingham is wrong to say that the Fees Decision "ignored" the cases on which Ms. Cottingham relied. The Fees Decision cited them. The Fees Decision also explained that as decisions from special masters, they do not establish binding precedent. Hanlon v. Sec'y of Health & Human Servs., 40 Fed. Cl. 625, 630 (1998).[3]

Moreover, the Fees Decision explained why, in the undersigned's view, an evidence-based approach to the reasonable basis is correct. "The first and most important step when interpreting a statute is, of course, analyzing its text." Terran v. Sec'y of Health & Human Servs., 195 F.3d 1302, 1310 (Fed. Cir. 1999). The

---

[3] In addition to not being bound by decisions of other special masters, special masters do not have to follow their own decisions. Hanlon, 40 Fed. Cl. at 630. This principle means that the undersigned does not have to evaluate reasonable basis according to the totality of the circumstances test, despite using that test in Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152 (Fed. Cl. Spec. Mstr. Jan. 9, 2008).
   Hamrick, which may have originated the totality of the circumstances test for reasonable basis, drew upon cases that interpreted the Equal Access to Justice Act (EAJA). Id. at *4, citing Smith v. Principi, 343 F.3d 1358, 1363 (Fed. Cir. 2003). However, the Court of Federal Claims later determined that the principles that govern the award of attorneys' fees in the Vaccine Act differ from those under EAJA. Morse v. Sec'y of Health & Human Servs., 98 Fed. Cl. 780, 785 (2010). This determination undermines the pedigree of the totality of the circumstances test.

portion of the Vaccine Act that authorizes special masters to award attorneys' fees and costs to unsuccessful petitioners requires that the special master find "there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e). According to section 11(c), which is captioned "Petition content," a Vaccine Program petition "shall contain . . . supporting documentation, demonstrating" five elements, listed as subparagraphs (A) through (E). 42 U.S.C. § 300aa–11(c). Thus, the Vaccine Act links "reasonable basis" to "supporting documentation." The Fees Decision stated: "Ms. Cottingham has offered no argument based on the text of the Vaccine Act that supports an interpretation of the reasonable basis standard that depends upon the statute of limitations." Fees Decision, issued Mar. 30, 2017. Ms. Cottingham quoted this sentence in her pending motion. Pet'r's Mot. for Recons. at 2. Yet, Ms. Cottingham still has not presented any argument based on the text of the Vaccine Act. In her motion for reconsideration, Ms. Cottingham would have been better served to present some argument derived from the words and structure of the Vaccine Act that supports her argument that the reasonable basis depends upon the totality of circumstances. The omission of this argument is telling.

Rather than focus on the text of the Vaccine Act, Ms. Cottingham emphasizes a "public policy" rationale. She devotes one section in her motion to this topic. See Pet'r's Mot. for Recons. at 15. However, the Fees Decision addressed "public policy" by discussing Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031 (Fed. Cir. 1994), and Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375 (Fed. Cir. 1994). Ms. Cottingham makes no attempt to explain how her view of reasonable basis is compatible with the Federal Circuit's statement that "Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorneys' fees and costs by merely having an expert state an unsupported opinion." Perreira, 33 F.3d at 1377.

In short, in advancing a motion for reconsideration, Ms. Cottingham has simply recast arguments that she presented in her October 26, 2016 motion and her November 28, 2016 reply. Ms. Cottingham has not addressed the primary points in the Fees Decision — (1) the lack of textual support for the totality of the circumstances test for reasonable basis and (2) Perreira. Thus, Ms. Cottingham has not established that "it is in the interest of justice" to reconsider the Fees Decision's use of an evidence-based approach to reasonable basis.

## II.  Whether the Totality of the Circumstances Supports the Claims Ms. Cottingham Set Forth in Her Petition

The heart of Ms. Cottingham's motion for reconsideration is an argument that the totality of the circumstances supports the claims set forth in the petition she filed on K.C.'s behalf. In this regard, she appears to make arguments along three lines. First, the special master failed to consider the entire record. Second, the special master wrongly imposed a duty on the petitioner's attorney to investigate his client's claims. Third, the special master wrongly imposed a duty on the petitioner's attorney to consider the temporal relationship between the vaccination and the onset of the injury the vaccination allegedly caused.

### A.  Consideration of the Entire Record

In determining whether to award compensation, the Vaccine Act requires special masters to consider the "record as a whole." 42 U.S.C. § 300aa–13(a)(1). In deciding the Fees Motion, the undersigned considered the entire record.

Ms. Cottingham seems to suggest that the Fees Decision was erroneous, stating "the Special Master cherry pick[ed] the evidence" in finding that the evidence did not support the petition's allegations. Pet'r's Mot. for Recons. at 5. Ms. Cottingham, however, does not immediately identify any records that were not discussed in the Fees Decision. Likewise, another review of Ms. Cottingham's October 26, 2016 fees application does not suggest that she cited any medical records omitted from the Fees Decision. In any event, the omission of a discussion of a particular medical record does not mean that the records were not considered. See Hazlehurst v. Sec'y of Health & Human Servs., 604 F.3d 1343, 1352 (Fed. Cir. 2010).

In other parts of the motion for reconsideration, Ms. Cottingham seems to suggest that the Fees Decision did not give enough weight to K.C.'s affidavit or the records from University of Alabama-Birmingham, Gynecology Clinic. See Pet'r's Mot. for Recons. at 12-13. An argument about how the special master valued evidence is not the same as an argument that the special master failed to consider the evidence. See Paterek v. Sec'y of Health & Human Servs., 527 Fed. Appx. 875, 884 (Fed. Cir. 2013)("Finding certain information not relevant does not lead to – and likely undermines – the conclusion that it was not considered.").

6

### B.  Counsel's Duty to Investigate Petitioner's Allegations

K.C.'s affidavit underlies much of Ms. Cottingham's argument about the reasonable basis for Ms. Cottingham's claim that the HPV vaccination harmed K.C., especially the claim for headaches. The following paragraphs of K.C.'s affidavit discuss headaches:

> 5.  However, things changed on November 1, 2012. At that time, I began getting regular weekly headaches. Over the next few weeks, not only did the frequency of the headaches increase but I also began to experience episodes of near black-outs where my vision became temporarily impaired. I also found myself having the occasional low-grade fever.
>
> 6.  On November 30, 2012, I returned to my doctor and told him of my symptoms. He examined me but only prescribed me an antibiotic. He advised me to drink plenty of water.
>
> 7.  The headaches, low-grade fevers and near black-outs continued. I didn't want to complain because I was taught to tough out what I thought was a temporary condition.
>
> 8.  I also began to notice that occasionally during majorette practice I would find the need to stop because I was feeling dizzy. That feeling had never occurred prior to this school year.
>
> 9.  I went to the doctor again on January 31, 2013 with a low-grade fever, headaches and what appeared to me to be a cold or sinus infection. The doctor treated me for a viral infection.

Exhibit 1. Significant portions of the affidavit quoted above are not consistent with the medical records created contemporaneously with the events that they describe.

Specifically, the Fees Decision noted that the medical record from November 30, 2012, was not consistent with the allegation that the headaches

7

started on "November 1, 2012." K.C.'s affidavit did not note that on November 30, 2012, the doctor diagnosed her with "acute sinusitis." See exhibit 3 at 88.

Further, the medical record from January 31, 2013, is not consistent with the allegation that K.C. was having "regular weekly headaches." Instead, the medical record says K.C. "[h]as had a headache today." Exhibit 3 at 78.

Given the affidavit's assertion that K.C. was having "regular weekly headaches," it would seem reasonable for K.C. to seek medical attention for these "regular weekly headaches." However, in three briefs, Ms. Cottingham has not identified any record in which K.C. or her mother informed a doctor that K.C. was having recurring headaches. The lack of a report should raise a question about the accuracy of K.C.'s assertion. For example, K.C. saw her pediatrician on August 14, 2014, and reported that she has "Been doing well. No concerns." Exhibit 3 at 109-10.

To the lack of record support for the assertion about "regular weekly headaches," Ms. Cottingham offers two answers. First, Ms. Cottingham presents a story of what K.C. might have said in an entitlement hearing. Pet'r's Mot. for Recons. at 7-8. The problem with this answer is that K.C. already presented an affidavit and she did not attempt to reconcile her assertion of "regular weekly headaches" in the way Ms. Cottingham is now proposing. Furthermore, in light of the lack of any medical records discussing "regular weekly headaches" from any time, the affidavit strains credibility.

As to a credibility assessment, Ms. Cottingham argues that "Petitioner's Counsel does not have the luxury of interpreting the record against the Petitioner." Pet'r's Mot. for Recons. at 8. The motion cites no authority for this proposition.

The lack of legal support is especially noticeable because the Fee Decision contained a lengthy quotation from Wisconsin Chiropractic Ass'n v. State, 676 N.W.2d 580, 589-90 (Wis. Ct. App. 2004) that indicates that an attorney's reliance on a client's statement is not always reasonable. Although the discussion was not as detailed as the Wisconsin Court of Appeals, the Supreme Court of Arizona, the state where Mr. Downing practices, took a consistent position in In re Alexander, 300 P.3d 536, 540 (Ariz. 2013) (en banc). Though the Fee Decision cited to both cases, Ms. Cottingham's motion for reconsideration did not address either case.

Closer to home, even cases from the Vaccine Program that have considered the totality of the circumstances in assessing reasonable basis have required the

8

attorney to investigate a claim before filing it. See Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 291 (2014) (finding that a special master acted within his discretion in not finding reasonable basis because, in part, the attorneys did not establish diligence and noting "an earlier telephone call to one of the firm's regularly retained experts might have provided some evidence of timely due diligence"); Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 93 (2016) ("If an attorney does not actively investigate a case before filing, the claim may not have a reasonable basis and so may not be worthy of attorneys' fees and costs"); Solomon v. Sec'y of Health & Human Servs., No. 14-0748V, 2016 WL 8257673, at *4 (Fed. Cl. Spec. Mstr. Oct. 27, 2016) ("Petitioner's counsel still is required to perform due diligence, given the available evidence and amount of time prior to the running of the statute of limitations"); cf. Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012) (noting the Vaccine Act "contemplates the sort of review prior to filing a claim that defendant highlighted: a simple review of available medical records to satisfy the attorneys that the claim is feasible"). "Vaccine Program attorneys still have the duty to investigate a Vaccine Act claim even if they find their client to be credible in describing the claim's purported factual basis." Livingston v. Sec'y of Health & Human Servs., No. 12-268V, 2015 WL 4397705, at *10 (Fed. Cl. Spec. Mstr. June 26, 2015) (finding no reasonable basis because counsel should have explored whether the petitioner actually received a vaccination as claimed).

In this case Mr. Downing received the Vestavia Pediatric records by June 23, 2015, and had ample time to review them. A simple review would have revealed that K.C. did not report to her pediatrician any "regular weekly headaches." Mr. Downing knew or should have known that this client's story about her daughter did not have support in these medical records.

The amount of information available to Mr. Downing before he filed the petition, including medical records from several doctors, makes arguments about the press of the statute of limitations suspect. Ms. Cottingham came to Mr. Downing approximately five months before Mr. Downing believed that the statute of limitations for one claim (the headache claim) would expire. Mr. Downing received medical records relatively quickly. Mr. Downing could have diligently evaluated those medical records and determined whether those records are consistent with his client's recollection of events.

9

### C. Counsel's Duty to Investigate the Temporal Relationship

In addition to the discrepancies between the medical records created contemporaneously with the events they are describing and K.C.'s affidavit, the Fees Decision also found that the three claims the petition asserted (headaches, fainting, and menstrual difficulties) were relatively remote in time from the vaccination. Ms. Cottingham challenges this finding, asking "How could Mr. Downing give Ms. Cottingham a medical opinion as to onset of autonomic dysfunction on the eve of the statute of limitations, when he is not appropriately credentialed to do so?" Pet'r's Mot. for Recons. at 13. Ms. Cottingham adds "The Special Master attempts to use a six week time frame for disease onset, as if anything that manifests outside of six weeks could never be considered vaccine-related." Id.

These arguments are flawed in multiple respects. First, the petition did not claim that the HPV vaccination caused "autonomic dysfunction." The petition claimed that the HPV vaccination caused headaches, fainting, and menstrual difficulties. Pet., filed Oct. 30, 2015.

Second, "the eve of the statute of limitations" depends upon assuming the accuracy of the affidavit's allegation that K.C. started having "regular weekly headaches" on November 1, 2012. As just discussed, this assumption is highly questionable.

Third, the Fees Decision did not limit the appropriate time to "six weeks." Of the three asserted claims, the earliest onset of injury is November 1, 2012, for headaches. The Fees Decision observed that the interval between the HPV vaccination and November 1, 2012 is "119 days, nearly four months." Fees Decision, issued Mar. 30, 2017. The Fees Decision also observed that Ms. Cottingham did not cite any cases in which special masters have accepted a four-month interval. Id. This observation remains accurate, as the motion for reconsideration also does not cite any cases with an interval as long as four months.

Fourth, Mr. Downing possesses the ability to research cases to find out if any special master found that a four-month interval was acceptable. Under the totality of the circumstances, Mr. Downing's pre-filing diligence should have included some preliminary research about the amount of time that could be considered reasonable. Mr. Downing possessed sufficient records, including the records from Vestavia Pediatrics that document when K.C. started having

10

menstrual difficulties, to explore this fundamental inquiry. See exhibit 3 at 174-75 ("has not had a period in 4 mo . . . Mom is concerned that the Gardasil series may have had something to do with the recent changes noted in her menstrual cycle") (dated May 14, 2015).

In connection with Mr. Downing's ability to research whether special masters have accepted a nearly four-month onset, it bears repeating that Mr. Downing met Ms. Cottingham nearly five months before Mr. Downing filed her petition. Mr. Downing possessed the medical records from Vestavia Pediatrics, which document two headaches, for approximately four months before the petition was filed. Mr. Downing has not explained why he could not perform any basic research before he filed the petition.

Fifth, to the extent that Ms. Cottingham is arguing that Mr. Downing required the assistance of an expert witness to assess the temporal interval, this point simply returns to the undersigned's preference for looking at evidence in assessing reasonable basis. If Mr. Downing needed to consult a doctor to find out whether four months (headache), nearly nine months (first episode of fainting), or 28 months (menstrual difficulties) could constitute an appropriate temporal interval, then he should have obtained a report from a doctor. The timesheets do not indicate any efforts to obtain an expert's report until months after the petition was filed.

### D. Additional Arguments

Ms. Cottingham makes several additional arguments that question the soundness of the Fees Decision's finding that the totality of the circumstances does not support the claims set forth in the petition. These arguments repeat arguments presented in the October 26, 2016 motion for attorneys' fees and costs and/or in the November 28, 2016 reply. A party's simple disagreement with an outcome does not justify the granting of a motion for reconsideration.

### Conclusion

The March 31, 2017 Fees Decision found that under either the evidence-based approach or the totality of the circumstances approach to reasonable basis Ms. Cottingham failed to establish the reasonable basis for any of the three claims set forth in the petition. A finding of reasonable basis is a predicate to an award of attorneys' fees and costs to an unsuccessful petitioner. 42 U.S.C. § 300aa–15(e). Thus, Ms. Cottingham was denied attorneys' fees and costs.

11

The pending April 7, 2017 motion for reconsideration fails to demonstrate that a different outcome is "in the interests of justice." Vaccine Rule 10(e). Thus, the motion for reconsideration is DENIED and the March 31, 2017 Fees Decision remains valid.

**IT IS SO ORDERED**.

S/Christian J. Moran<br>
Christian J. Moran<br>
Special Master