# In the United States Court of Federal Claims
No. 15-1291V
(Filed: October 12, 2017)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | National Childhood Vaccine Injury Act; 42 U.S.C. § 300aa-15(e); Voluntary Dismissal; Attorney's Fees and Costs; Totality of the Circumstances; Impending Statute of Limitations; Reasonable Basis for Claim. |
| SUSAN COTTINGHAM, | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Andrew Donald Downing, Van Cott & Talamante, PLLC, 3030 N. Third Street, Suite 790, Phoenix, AZ 85012, for Petitioner.

Chad A. Readler, C. Salvatore D'Alessio, Catharine E. Reeves, Heather L. Pearlman, Ann D. Martin, United States Department of Justice, Civil Division, Torts Branch, P.O. Box 146, Benjamin Franklin Station, Washington, D.C. 20044, for Respondent.

___

**OPINION**

___

**WILLIAMS**, Judge.

This vaccine injury case comes before the Court on Petitioner's Motion for Review of the Special Master's decision denying Petitioner's requested attorney's fees and costs, Cottingham v. Secretary of Health & Human Services, No. 15-1291 V, 2017 WL 1476242 (Fed. Cl. Spec. Mstr. Mar. 30, 2017) ("Fee Dec."), and the Special Master's decision denying reconsideration. Cottingham v. Secretary of Health & Human Services, No. 15-1291 V, 2017 WL 2209904 (Fed. Cl. Spec. Mstr. Apr. 20, 2017) ("Recons. Dec."). The Special Master found that Petitioner had

___

[1] Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its Opinion under seal to provide the parties an opportunity to submit redactions. The parties did not propose any redactions. Accordingly, the Court publishes this Opinion.

failed to establish a reasonable basis for her claim, filed on behalf of her minor child, K.C., and therefore denied Petitioner's motion for attorneys' fees and costs in its entirety.

Because the Special Master imposed an overly onerous burden on Petitioner to establish a reasonable basis for her claim and failed to adequately consider the impending statute of limitations, the Court vacates the Special Master's decisions and remands this matter.

## **Factual Background**

K.C. was born on June 22, 1998. Pet'r's Ex. 3, at 5. Other than a diagnosis of mononucleosis in March 2012, K.C. had no significant recorded health concerns prior to the administration of the HPV vaccine on July 5, 2012. See generally Pet'r's Ex. 3 (K.C.'s medical records from Vestavia Pediatrics). K.C. was 14 years old when she received the first dose of the HPV vaccine, among other vaccinations, at her pediatrician's office. Pet'r's Ex. 2, at 1-2.

In the months following vaccine administration, K.C. was seen by her doctors for complaints regarding a knee injury and "heavy menstrual cycles and irregular bleeding." See Pet'r's Ex. 3, at 64-65; Pet'r's Ex. 5, at 3-27; Pet'r's Ex. 9, at 4-6. On October 10, 2012, K.C. was prescribed oral contraceptives to control her menstrual cycles. Pet'r's Ex. 9, at 4-6.

According to K.C.'s sworn statement, on November 1, 2012, approximately four months post-vaccine, K.C. began experiencing "regular weekly headaches" followed by episodes of near-blackouts and occasional low-grade fever. Pet'r's Ex. 1, at ¶ 5.[2] On November 30, 2012, K.C. reported to her pediatrician symptoms that included coughing, nasal congestion, headaches, and low grade fever "during the past week." Id. at 87-88. K.C.'s pediatrician attributed her symptoms to acute sinusitis. Id. at 88.

Between January of 2013 and May of 2014, K.C. reported additional symptoms to her treatment providers, and her pediatrician attributed all these symptoms to causes unrelated to the HPV vaccine. On January 31, 2013, K.C. reported symptoms that included runny nose, congestion, low-grade fever, sore throat, and headache; her pediatrician attributed her symptoms to rhinitis and acute viral pharyngitis. Pet'r's Ex. 3, at 78-79. On March 29, 2013, K.C. saw her physician for treatment of "acute onset [that] morning of fever and dizziness," reporting that she "had actually fainted upon getting up this morning." Id. at 80. Her pediatrician diagnosed her with gastroenteritis and dehydration, noting that she was likely "at the early stage of an intestinal virus." Id. at 81.

On May 23, 2013, K.C. reported that she had "[p]assed out today while at the pool," hit the back of her head on the pool deck, and thereafter suffered from "slight [headache] and queasiness." Id. at 70. In light of K.C.'s statements that that she had not had anything to eat or drink that morning, that it was very hot, and that she stood up quickly immediately prior to passing out, the pediatrician opined that the May 23rd episode was an isolated event related to dehydration. Id. at 70-71.

---

[2] Petitioner identified November 1, 2012, as the date of onset of K.C.'s vaccine-caused injury. Pet. ¶ 4; Mot. for Fees 2.

On July 25, 2013, a pediatric cardiologist attributed K.C.'s recent episodes of dizziness and fainting to a vasovagal etiology unrelated to any vaccine. Id. at 111-12. K.C. was given a second HPV vaccine, among other vaccinations, at her pediatrician's office on August 18, 2014. Id. at 109-10. Although according to K.C.'s sworn statement, her mother directed K.C.'s pediatrician not to administer the second HPV vaccine, "his assistant administered the vaccine before we knew what it was." Pet'r's Ex. 1, at ¶ 17. The record contains no documentation that K.C. was ever administered the third HPV vaccine.

In early 2015, K.C. experienced menstrual irregularities. See Pet'r's Ex. 9, at 4-6. At an April 28, 2015 appointment, K.C.'s gynecologist noted that K.C. had stopped taking prescribed contraceptives in October or November 2014, and that she had not had a menstrual cycle since December 2014. Pet'r's Ex. 7, at 7. The gynecologist's impression was "secondary amenorrhea," possibly attributable to polycystic ovarian syndrome. Id. at 9. At the April 28, 2015 appointment, the gynecologist re-prescribed K.C.'s oral contraceptives. Id. As of July 8, 2015, K.C.'s abnormal uterine bleeding had been resolved with the resumed use of contraceptives. Id. at 11-13.

On May 15, 2015, Petitioner retained counsel to pursue her vaccine claim. Mot. for Review 7. Over the next five months, between May 15, 2015, and October 30, 2015, counsel requested and obtained medical records from K.C.'s pediatrician, orthopedist, physical therapist, urgent care provider, and gynecologist before filing the petition on October 30, 2015. Id.; see Pet'r's Exs. 3–7.

According to Petitioner's sworn statement dated March 7, 2016, K.C. continued to suffer from headaches at that time. Pet'r's Ex. 8, at 2. In her own sworn statement, K.C. stated that she was still suffering from headaches in July of 2013, but did not mention these headaches to her doctor at that time. K.C. testified that these headaches subsequently lessened at the beginning of her sophomore year of high school and returned "shortly after" the second vaccination on August 18, 2014. Pet'r's Ex. 1, at ¶¶ 14, 16-18.

**Procedural History**

On October 30, 2015, Petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10 to 34 (2012) ("Vaccine Act"), alleging that a Gardasil vaccination administered on July 5, 2012, caused K.C. to develop "a severe adverse reaction" including "headaches unlike anything she experienced before . . . on a regular basis," "episodes of lightheadedness, which she described as near black-out," two episodes of fainting - - once where she "walked to the bathroom and passed out and hit her head" and another where she was "unconscious for about a minute," and "menstrual problems, missing her period for 5 or 6 months." Pet. ¶¶ 4-7, 9.

Petitioner first contacted counsel on May 15, 2015, and signed a retention agreement that same day. Mot. for Fees 4-5. According to timesheets, counsel first requested K.C.'s medical records on June 17, 2015, from Vestavia Pediatrics and UAB Department of Obstetrics and Gynecology. Id. Ex. A, at 10. Counsel's legal assistant reviewed these records on June 23, 2015, and August 4, 2015, and counsel reviewed them on October 16, 2015. Id. at 1, 4-5. At the time the petition was filed, counsel had not yet obtained all of K.C.'s medical records and had not yet consulted an expert. See Pet'r's Ex. 7; Pet'r's Ex. 10. Counsel obtained a sworn statement from K.C. on October 28, 2015, in which K.C. describes when she began experiencing "regular weekly

3

headaches," low-grade fevers, dizziness, near black-outs, and menstrual problems. Pet'r's Ex. 1, at ¶¶ 5-19.

Based on his review of the medical records then collected from Vestavia Pediatrics, OK Orthopedics, Millennium PT, Middle Creek Medical, and UAB Department of Obstetrics and Gynecology, and K.C.'s sworn statement, counsel was of the opinion that the onset of K.C.'s vaccine-caused injury occurred on November 1, 2012, when K.C. developed "regular weekly headaches," and that the applicable statute of limitations therefore expired on November 1, 2015. Mot. for Fees 2, 4-5. Counsel filed the petition on October 30, 2015, two days prior to the expiration of the statute of limitations. At the time of filing, counsel did not yet have Petitioner's records from Children's of Alabama, or additional records from UAB Department of Obstetrics and Gynecology.

By March 15, 2016, counsel had collected and filed all relevant medical records. On March 28, 2016, the Special Master conducted a status conference. During the discussion, Respondent's counsel "noted that reasonable basis for bringing the case may not be present for petitioner." Order (Mar. 28, 2016). "Acknowledg[ing] the reasonable basis issue," Petitioner's counsel requested and was granted an opportunity to review the case with a medical expert and file a supporting expert report. Id. Petitioner was ordered to file a status report within 30 days "on progress toward locating an expert or alternative directions for the case." Id. On April 8, 2016, Petitioner's counsel contacted the first potential expert, Dr. Nemechek. On April 26, 2016, Petitioner requested an extension of time to retain an expert and to file an expert report, stating that "she sent her file out for review by an expert, but the expert requires additional time to complete the review." See Order (Apr. 27, 2016). On May 16, 2016, and May 24, 2016, Petitioner's counsel had follow-up calls with Dr. Nemechek. On May 27, 2016, Petitioner requested a second extension citing counsel's need to conduct a follow-up call with his client after his calls with Dr. Nemechek. See Order (June 3, 2016). The Special Master granted these extensions.

On June 15, 2016, after Petitioner had missed her June 10, 2015 deadline to file a status report or an expert report, the Special Master ordered Petitioner to "immediately file a motion requesting an extension of time, or, in the alternative, file the expert report or status report." When, as of June 28, 2016, Petitioner had not filed either a status report or an expert report, the Special Master issued an order to show cause why Petitioner's case "should not be dismissed for failure to prosecute and/or failure to comply with the court's order." Order 1 (June 28, 2016). On August 3, 2016, Petitioner's counsel contacted a second potential expert, Dr. Lee. On August 26, 2016, Petitioner filed her response to the Order to Show Cause, stating that she had been "attempting to secure an expert to opine in this matter," and that she had secured an expert who reviewed the claim but had ultimately been unable to offer an opinion. Pet'r's Resp. to Show Cause Order 1. Petitioner stated that she "wish[ed] to continue to pursue her vaccine claim" and that she was attempting to locate another expert. Id. Petitioner was granted until September 23, 2016, to secure another expert. Order (Aug. 30, 2016). On August 30, 2016, Petitioner's counsel corresponded via email with Dr. Lee. On September 20, 2016, and September 22, 2016, Petitioner's counsel had follow-up calls with Dr. Lee. Petitioner's deadline to secure another expert was extended until October 7, 2016, as counsel had met with Dr. Lee and was waiting to speak with his client to "discuss how she would like to proceed." Order (Sept. 26, 2016).

On October 7, 2016, Petitioner moved to dismiss her petition, acknowledging that "an investigation of the facts and science supporting [her] case, as medical records were received and

investigation was ongoing, has demonstrated to Petitioner that she will likely be unable to meet her burden of proof." Mot. for Dec. 1. The Special Master issued a dismissal decision on October 13, 2016.

On October 26, 2016, Petitioner filed an Application for Final Attorneys' Fees and Costs seeking $10,363 in attorneys' fees and $1,105.77 in costs. Mot. for Fees 21. This amount includes $5,223 for attorney time and $5,140 in legal assistant time. On November 14, 2016, Defendant filed a Response to Petitioner's Application arguing that the Special Master should deny any attorneys' fees and costs because Petitioner's claim lacked a reasonable basis. Fee Resp. 13-14.

### The Special Master's Decisions Denying Fees and Denying Reconsideration

On March 30, 2017, the Special Master issued a decision denying Petitioner any attorneys' fees or costs. Fee Dec. *16. The Special Master noted that, in the absence of guidance from the Federal Circuit on the reasonable basis standard, the parties had endorsed two competing standards for assessing reasonable basis: a "totality of the circumstances" standard, advocated by Petitioner, and an evidentiary standard, advocated by Respondent. Id. at *5-6.

The Special Master ultimately held that, under either standard, Petitioner had failed to prove that her claim had a reasonable basis, finding the medical records collected at the time the petition was filed did not support causation, and the extended period between vaccination and the onset of K.C.'s injuries placed her injuries "outside the typical temporal window." Id. at *10, 13-14. The Special Master denied Petitioner's motion for reconsideration.

### The Petition for Review

On April 27, 2017, Petitioner petitioned for review of the Special Master's decisions denying fees and reconsideration. On review, Petitioner contends that the Special Master erred in applying an evidence-based standard on reasonable basis and in failing to take into account the impending statute of limitations. Mot. for Review 2-14. Petitioner further argues that medical records support her claimed injuries and that the Special Master erred in concluding that the length of time between vaccination and onset was implausible. Id. at 15-18.

Respondent argues that Petitioner's claim lacked a reasonable basis because it was not supported by medical records or expert opinion and because the time frame between vaccination and onset of K.C.'s injury was "facially suspect." Resp. 17-20. Respondent further argues that, because Petitioner had retained counsel five months prior to the expiration of the statute of limitations, Petitioner should not now be permitted to rely on the statute of limitations as an excuse for counsel's failure to exercise due diligence. Id. at 14-15. On June 2, 2017, Petitioner filed a Reply to Respondent's Response.

## Discussion

### Jurisdiction

This Court exercises jurisdiction pursuant to § 300aa-12(e)(1) of the Vaccine Act. In reviewing a decision rendered by a Special Master, this Court may: (1) uphold the findings of fact and conclusions of law by sustaining the special master's decision; (2) set aside any findings of fact or conclusions of law "found to be arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law" and issue its own findings of fact or conclusions of law; or (3) "remand the petition to the Special Master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2)(A)-(C) (2016).

To reverse for an abuse of discretion, this Court must find that the Special Master's decision was "clearly unreasonable, arbitrary, or fanciful," "based on an erroneous conclusion of the law,'" "based on clearly erroneous fact findings," or, alternatively, that the "'record . . . contains no evidence on which the [Special Master] could rationally base [his] decision.'" Scanlon v. Sec'y of Health & Human Servs., 116 Fed. Cl. 629, 633 (2014) (quoting Ninestar Tech. Co. v. Int'l Trade Comm'n, 667 F.3d 1373, 1379 (Fed. Cir. 2012)); see Chuisano v. United States, 116 Fed. Cl. 276, 284 (2014). Where "the Special Master has 'considered the relevant evidence of record, drawn plausible inferences, [and stated] a rational basis for the decision,' reversible error is extremely difficult to establish." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012) (quoting Hines v. Sec'y of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991)) (alteration in original). "If, however, the exercise of discretion turns on a potentially erroneous statutory interpretation of the Vaccine Act (a question of law), then the court will review the interpretation without deference." Chuisano, 116 Fed. Cl. at 284 (citing Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir. 2008)).

**Standard for Awarding Attorneys' Fees and Costs**

Special Masters are statutorily authorized to determine and award "reasonable attorneys' fees" and costs under the Vaccine Act. 42 U.S.C. § 300aa-15(e)(1) (2016). To award attorneys' fees and costs to a petitioner who has been denied compensation, the Special Master must "determine that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). "Good faith" and "reasonable basis" are assessed separately. Unlike good faith, reasonable basis is not presumed, and it is assessed using an objective standard. McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303-04 (2011) (citing Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994)).[3] A Special Master's "decision whether a particular petition . . . had a reasonable basis at the time of filing, and therefore that counsel would be entitled to attorneys' fees, is within the discretion of the Special Master and is generally reviewed for abuse of discretion." Scanlon, 116 Fed. Cl. at 633 (citing Davis v. Sec'y of Health & Human Servs., 105 Fed. Cl. 627, 633 (2012)).

**The Special Master Should Consider the Totality of the Circumstances in Assessing the Reasonable Basis of Petitioner's Vaccine Act Claim**

The Federal Circuit has not addressed what legal standard tribunals should apply in assessing whether a petitioner's Vaccine Act claim has a "reasonable basis" for purposes of fee awards. Here, Respondent urges the Court to apply an evidence-based standard, while Petitioner espouses the totality-of-the-circumstances standard. The Special Master applied both standards but expressed a preference for the evidence-based standard.

---

[3] Respondent has not contested the existence of a good faith basis for Petitioner's claim.

6

In this Court's view, the Special Master's preferred evidence-based standard is too narrow. As the Court of Federal Claims has repeatedly noted, the Vaccine Act grants Special Masters "maximum discretion" in applying the reasonable basis standard. See, e.g., Silva, 108 Fed. Cl. at 401-02; Chuisano, 116 Fed. Cl. at 285. Limiting the standard to an evidence-based test would deprive Special Masters of the discretion to consider multiple potentially relevant circumstances -- such as the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim -- in assessing whether a Vaccine Act claim has a reasonable basis. Because Vaccine Act claims may involve state-of-the-art scientific developments, untested theories, and unknown interactions and results, these difficult cases may entail close calls, and the standard for assessing the reasonable basis for a claim should reflect this reality. See Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed. Cir. 2005) ("The government's suggestion that prong two of Stevens [confirmation of medical plausibility from the medical community and literature] does not impermissibly raise Althen's burden, ignores the legal and practical effect of that test: by requiring medical literature, it contravenes section 300aa-13(a)(1)'s allowance of medical opinion as proof. This prevents the use of circumstantial evidence envisioned by the preponderance standard and negates the system created by Congress, in which close calls regarding causation are resolved in favor of injured claimants."). As the Federal Circuit has noted, "[t]he first time an injury is causally linked with a vaccine often occurs as a result of a successful non-Table petition." Cloer v. Sec'y of Health and Human Servs., 654 F.3d 1322, 1332 n.4 (Fed. Cir. 2011). So too, "[a] vaccine-related injury . . . is not always clear at the outset." Chuisano, 116 Fed. Cl. at 285.

This Court agrees with the majority of the Court of Federal Claims' opinions, finding that the reasonable basis of a Vaccine Act claim should be assessed based on the totality of the circumstances. See, e.g., Simmons v. Sec'y of Health & Human Servs., 128 Fed. Cl. 579, 583 (2016); Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016); Graham, 124 Fed. Cl. at 574; Scanlon, 116 Fed. Cl. at 629; Chuisano, 116 Fed. Cl. at 285; McKellar, 101 Fed. Cl. at 297; but see Silva, 108 Fed. Cl. at 405 (stating that "this court should not choose the correct interpretation" of reasonable basis given the broad grant of discretion to the special masters by the Vaccine Act to award attorney's fees when no compensation is awarded).

The reasonable basis requirement is "objective, looking not at the likelihood of success of a claim but more to the feasibility of the claim." Di Roma v. Sec'y of the Dep't of Health & Human Servs., No. 90-3277, 1993 WL 496981, at * 1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). In conducting the reasonable basis analysis, special masters should consider the circumstances under which the petition is filed, any jurisdictional questions, the factual basis and medical support for the petition, and any other legal issues that may arise. Scanlon, 116 Fed. Cl. at 633-34. The Federal Circuit has held that Special Masters have discretion to find a lack of reasonable basis where a petitioner's claim is based solely on "unsupported speculation." See Perreira, 33 F.3d at 1377 (upholding a Special Master's determination that a petitioner lacked a reasonable basis to rely on an "expert opinion . . . grounded in neither medical literature nor studies").

This totality of the circumstances assessment should take into account evidence available at the time a claim is filed and evidence that becomes available as the case progresses. Assessment of reasonable basis should not be a static, one-time inquiry at the time of filing a petition. Rather, petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel

7

knows or should know a claim cannot be proven. See Perreira, 33 F.3d at 1377 (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they reviewed their expert's opinion which consisted entirely of unsupported speculation); Curran v. Sec'y of Health & Human Servs., 130 Fed. Cl. 1, 6-8 (2017); Allicock v. Sec'y of Health & Human Servs., 128 Fed. Cl. 724, 727 (2016). Special Masters may be required to "revisit[] the reasonable basis inquiry if such reconsideration is warranted by changed circumstances during the proceedings." Chuisano, 116 Fed. Cl. at 288.

**The Special Master Misapplied the Reasonable Basis Standard**

### The Medical Records

Petitioner challenges the Special Master's finding that Petitioner lacked a reasonable basis for her claim, arguing that the Special Master analyzed her claim "under an elevated entitlement standard, not a reasonable basis standard." Mot. for Review 6. Petitioner argues that the Special Master erred in concluding that there was no evidence to support Petitioner's claim that the HPV vaccination caused K.C.'s headaches, fainting, or menstrual problems, as her medical records supported Petitioner's claims. Id. at 6-11.

In finding that K.C.'s medical records did not support "recurring headaches," the Special Master discounted K.C.'s sworn statement, finding that it lacked credibility. See Recons. Dec. *4 ("In light of the lack of any medical records discussing 'regular weekly headaches' from any time, the affidavit strains credibility."). In his reconsideration decision, the Special Master stated:

> the Fees Decision noted that the medical record from November 30, 2012, was not consistent with the allegation that the headaches started on "November 1, 2012." K.C.'s affidavit did not note that on November 30, 2012, the doctor diagnosed her with "acute sinusitis."
>
> Further, the medical record from January 31, 2013, is not consistent with the allegation that K.C. was having "regular weekly headaches." Instead, the medical records says K.C. "[h]as had a headache today."
>
> Given the affidavit's assertion that K.C. was having "regular weekly headaches," it would seem reasonable for K.C. to seek medical attention for these "regular weekly headaches." However, in three briefs, Ms. Cottingham has not identified any record in which K.C. or her mother informed a doctor that K.C. was having recurring headaches. The lack of a report should raise a question about the accuracy of K.C.'s assertion.

Id. (internal citations omitted) (alteration in original).

However, the allegation that K.C. suffered from recurring headaches was based on counsel's reasonable reliance on contemporaneous medical records documenting K.C.'s headaches in late November 2012 and on January 31, 2013. See Pet'r's Ex. 3, at 87-88 (noting, on November 30, 2012, "[headaches] on and off all week"), 78-79 (noting headaches of unknown duration). In her sworn statement, K.C. stated that her "regular weekly headaches" began on November 1, 2012, and that "[she] didn't want to complain because [she] was taught to tough out what [she] thought was a temporary condition." Pet'r's Ex. 1, at ¶¶ 5, 7.

8

Regarding Petitioner's claim for fainting, the Special Master found that the "Vestavia Pediatrics records further undermine the reasonableness of the claim" because they attributed both fainting episodes to underlying causes unrelated to K.C.'s receiving the Gardasil vaccine. Fee Dec. *14. Regarding Petitioner's claim of menstrual problems, the Special Master stated that the Vestavia Pediatrics records "again call into question the assertions in the petition," as there is no evidence that K.C. was having menstrual difficulties at either her 2013 or 2014 check-up, as the first evidence that K.C. had begun missing her period was a nurse's note dated May 14, 2015. Id. However, the absence of a reference to a condition in a medical record is much less significant than a reference which negates the existence of the condition. See Murphy v. Sec'y of Health & Human Servs., 23 Cl. Ct. 726, 733, aff'd, 968 F.2d 1266 (Fed. Cir. 1992). Here, the medical records do not negate the existence of K.C.'s headaches, fainting, or menstrual problems. To the contrary, the medical records mention these conditions. Nor do the medical records contradict K.C.'s testimony. Cf. Cucuras v. Sec'y of Dep't of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To interpret these medical records to vitiate any reasonable basis for the claim places too onerous a burden on counsel at the pleading stage, and is inconsistent with the Vaccine Act's policy that "close calls regarding causation are resolved in favor of injured claimants." Althen, 418 F.3d at 1280.

In her sworn statement, K.C. explained why she had failed to report her headaches and dizziness on other occasions- - she was a high school student afraid that reporting these conditions might prevent her from going to band camp, a reasonable fear for a girl that age. Contrary to the Special Master's finding, for purposes of assessing the reasonable basis of Petitioner's claim, the medical records referenced K.C.'s injuries consistently with her and her mother's sworn statements, and her counsel reasonably credited their sworn statements that K.C. suffered from recurrent headaches, fainting, and menstrual problems. Insisting that an injured claimant's testimony precisely mesh with medical records is too exacting a standard to apply in assessing whether a claim has a reasonable basis.

### **Proximity of the Date of Onset**

The Special Master found a lack of temporal proximity between vaccination and onset for each of Petitioner's claimed injuries - - headaches, dizziness, and menstrual difficulties. The intervals between the date of first vaccination and the onset of injury were: 119 days for headaches, 267 days for the first fainting episode and 322 days for the second fainting episode, and over two years for menstrual difficulties. Petitioner challenged the Special Master's findings on temporal proximity, arguing that the Special Master essentially required counsel to perform an Althen prong 3 entitlement analysis without all the medical records. The Special Master found Petitioner's evidence about her headaches to be unreliable because the interval of nearly four months between the vaccine and onset had not been previously accepted as "an appropriate time from which to infer causation." Fee Dec. *13.[4] The Special Master faulted counsel for failing to cite a case in which a Special Master had "accepted four months as an appropriate time from which to infer

---

[4] Petitioner claims that the Special Master applied a six-week time frame for injury onset and claims that this period of time is not "universal" and does not take into account individual differences in patients. Mot. for Recons. 13. ("The Special Master attempts to use a six week time frame for any and all disease onset, as if anything that manifests outside of forty-two days could never be considered vaccine-related." (emphasis in original)).

9

causation," and found, without further explanation, that "four months is outside the typical temporal window." Id.

The Special Master's conclusion that Petitioner's counsel was required to marshal evidence and precedent on the timing of onset of Guardasil vaccine injuries to establish a reasonable basis for filing a claim asks too much. There is only one Federal Circuit decision addressing the proximate temporal relationship between Gardasil and an injury, and that case involved a different injury. In Koehn v. Secretary of Health & Human Services, the Federal Circuit affirmed the denial of compensation for lack of a proximate temporal relationship, finding that a seven-month interval between vaccination and the development of systemic juvenile idiopathic arthritis was too long of a time frame and not supported by the record. 773 F.3d 1239, 1244-45 (Fed. Cir. 2014).

The HPV vaccine at issue here, the Gardasil vaccine, was approved by the Food and Drug Administration on June 8, 2006, and neither Petitioner nor Respondent cited evidence regarding an appropriate temporal window for the onset of the claimed injuries caused by this vaccine. This case does not involve a vaccine or injury whose onset window has been established by case law, expert opinion, or medical literature. Presumably, this is an issue that would have been addressed by Petitioner's causation expert, had one been retained. Retention of a causation expert is not, however, a prerequisite for filing a vaccine petition. Chuisano, 166 Fed. Cl. at 290-91 (finding that "the court does not require, as a rule, that the firm engage in causation research or expert communications" prior to filing a petition); Morris v. Sec'y of Health & Human Servs., No. 12-415 V, 2016 WL 3022141, at *5 (Fed. Cl. Spec. Mstr. Apr. 1, 2016) (expert retained over three years after filing of petition).

Although Petitioner's inability to present evidence regarding the timeliness of injury onset may, ultimately, have constituted a "changed circumstance" warranting reexamination of reasonable basis, Petitioner's failure to marshal more legal precedent and evidentiary support for this aspect of her claim at the time her petition was filed does not mean the claim lacked a reasonable basis, warranting a denial of any fees. As the Court of Federal Claims explained in Chuisano:

> The Federal Circuit has instructed that remedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose. The overarching purpose of the Vaccine Act, and the National Childhood Vaccine Injury Compensation Program it created, is to award compensation to vaccine-injured persons quickly, easily, and with certainty and generosity. A vaccine-related injury, however, is not always clear at the outset. As the Federal Circuit has noted, the first time an injury is causally linked with a vaccine often occurs as a result of a successful non-Table petition. Congress would not have intended to discourage counsel from representing petitioners who, because of the difficulty of distinguishing between the initial symptoms of a vaccine-related injury and untreated malady . . . may nevertheless have good-faith claims with a reasonable basis. Thus, a stated purpose of the Act's fees scheme was to avoid limiting petitioners' ability to obtain qualified assistance by making fees awards available for non-prevailing, good faith claims. Congress recognized that having to shoulder attorneys' fees could deter victims of vaccine-related injuries from seeking redress.

116 Fed. Cl. at 285.

### The Impending Statute of Limitations and Counsel's Conduct

Petitioner argues that the Special Master failed to take into account the impending statute of limitations and counsel's conduct in making his determination on reasonable basis, two factors that have been analyzed by other Special Masters. Mot. for Review 4. The Special Master addressed the statute of limitations for the first time in his reconsideration decision, stating:

> [t]he amount of information available to Mr. Downing before he filed the petition, including medical records from several doctors, makes arguments about the press of the statute of limitations suspect. Ms. Cottingham came to Mr. Downing approximately five months before Mr. Downing believed that the statute of limitations for one claim (the headache claim) would expire. Mr. Downing received medical records relatively quickly. Mr. Downing could have diligently evaluated those medical records and determined whether those records are consistent with his client's recollection of events.

Recons. Dec. *5.

The Special Master's suggestion that Petitioner's counsel failed to act with due diligence is unwarranted.[5] According to counsel's timesheets, Petitioner retained counsel on May 15, 2015. Counsel made his first request for medical records roughly one month later on June 17, 2015. This initial set of records (received prior to the filing of the petition) was received on August 24, 2015. Counsel completed his review of this set of records within two months on October 16, 2015. It was reasonable for Petitioner's counsel to file a protective petition and wait to contact an expert until he obtained all of K.C.'s medical records. As Petitioner's counsel explains, the outstanding medical records "would have arguably been addressing the concerns that Gardasil was the cause of Petitioner's complaints," and "would have filled in the gaps of the Vestavia Pediatrics [r]ecords." Mot. for Review 13. Counsel did not know what these records contained, and they could well have impacted the reasonable basis of the claim.

---

[5] The Special Master reiterated his insinuation that counsel failed to act with due diligence:

> Ms. Cottingham's briefs do not cite any case in which special masters have accepted four months as an appropriate time from which to infer causation. The omission tends to show a lack of diligence because with minimal investigation Mr. Downing should have realized that four months is outside the typical temporal window.

\*   \*   \*

> At the end of October 2015, when Mr. Downing was preparing the petition, he knew or should have known that there were considerable problems with the allegations that he was making on Ms. Cottingham's behalf, including the relative distant latency between the vaccination and the alleged onset of disorders. An appropriate exercise of diligence from Mr. Downing could have prevented this situation entirely.

Fee Dec. *13, 15 (internal citations and footnote omitted).

11

Once Petitioner's counsel obtained all the records, he attempted to secure a supporting expert opinion. Less than one month after receiving the final installment of medical records, counsel contacted the first potential expert, Dr. Nemechek, on April 8, 2016, with follow up calls on May 16, 2016, and May 24, 2016, and contacted a second expert, Dr. Lee, on August 3, 2016, with an email on August 30, 2016, and follow-up calls September 20, 2016, and September 22, 2016. Once the experts were unable to support Petitioner's claim, Petitioner's counsel promptly sought dismissal of the petition on October 7, 2016. In short, counsel acted with due diligence.

Petitioner is correct that an impending statute of limitations should play a role in a reasonable basis determination. Chuisano, 116 Fed. Cl. at 287 ("[T]he statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances."). The Special Master erred in failing to consider the impending statute of limitations as a factor weighing in favor of a reasonable basis finding. See Recons. Dec. *6. In addressing Petitioner's objections on his finding of a lack of temporal proximity, the Special Master, in his reconsideration decision, found that Petitioner's argument regarding filing on "'the eve of the statute of limitations' depend[ed] upon assuming the accuracy of [K.C.'s] affidavit's allegation that K.C. started having 'regular weekly headaches' on November 1, 2012." Id. However, the Special Master found this assumption "highly questionable" in light of "discrepancies" he saw between K.C.'s sworn statement and contemporaneous medical records. Id. As noted above, the Special Master erred in finding inconsistencies and in concluding that counsel should have discredited K.C.'s complaints of her injuries. In the absence of medical records directly contradicting K.C.'s statements, Petitioner's counsel reasonably credited his client's complaints and, facing an imminent expiration of the statute of limitations, included them in the petition for vaccine compensation. Where an impending statute of limitations forced counsel to choose between preventing a Vaccine Act claimant from pursuing a potentially viable claim, or filing a complaint without a complete set of medical records and expert analysis, counsel acted prudently in preserving his client's rights.

## Conclusion

Petitioner's motion for review is **GRANTED**. The Special Master's decision denying attorneys' fees and costs is **VACATED**, and the case is remanded to the Special Master for further proceedings consistent with this decision.

On remand, the Special Master shall apply a totality of the circumstances standard and reassess whether Petitioner's claim had a reasonable basis at the time the petition was filed and at intervals when additional evidence became available to Petitioner's counsel thereafter.

Pursuant to 42 U.S.C. § 300aa-12(e)(2), the Court allows 90 days for completion of proceedings on remand.

The Clerk shall not disclose this decision publicly for 14 days.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**