# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SUSAN COTTINGHAM, on behalf of her minor child, K.C., | \* \* \* | No. 15-1291V |
| Petitioner, | \* \* \* | Special Master Christian J. Moran |
| v. | \* \* | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* \* \* \* | Filed: December 12, 2017 Attorneys' fees and costs; reasonable basis; remand |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Andrew D. Downing</u>, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
<u>Ann D. Martin</u>, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION ON REMAND
## AWARDING ATTORNEYS' FEES AND COSTS[1]

Susan Cottingham filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10 through 34 (2012), on October 30, 2015, on behalf of her minor daughter, K.C. However, the case was dismissed within a year of its filing. <u>Decision</u>, 2016 WL 6575170 (Oct. 13, 2016). Her motion for attorneys' fees and costs was subsequently denied because she failed to establish a reasonable basis supported the claims for which she brought her petition. <u>Fees Decision</u>, 2017 WL 1476242 (Mar. 30, 2017).

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

However, after Ms. Cottingham filed a motion for review, the Court vacated the Fees Decision and remanded for additional consideration. Opinion, ___ Fed. Cl. ___, 2017 WL 4546579 (Oct. 12, 2017). Under the standard for reasonable basis set in that opinion, Ms. Cottingham passes the threshold for finding reasonable basis. Thus, she is awarded **$32,909.36** in attorneys' fees and costs.

## Background[2]

K.C. was born in 1998. Her health through 2011 was relatively routine and overall good.

In March 2012, a Middle Creek Urgent Care facility diagnosed K.C. with mononucleosis. A week later, K.C.'s regular pediatrician saw her. K.C. stated that her throat was hurting, she felt tired, and she had headaches. The doctor diagnosed her as having a viral illness on top of the mononucleosis. Exhibit 3 at 55-56.

Before starting high school, K.C. returned to the pediatrician's office. The doctor did not record any significant health concerns. During this appointment, which occurred on July 5, 2012, K.C. received three vaccinations – the hepatitis A vaccine, the meningococcal conjugate vaccine, and the human papillomavirus (HPV) vaccine. Exhibit 3 at 99-100. Ms. Cottingham's claim rested upon the HPV vaccine.

Approximately one month later, while performing as a majorette in her school's band, K.C. twisted her right knee. The pediatrician recorded that except for the problem with her right knee, a review of symptoms was "negative." Exhibit 3 at 64. For the knee injury, K.C. went to physical therapy. Exhibit 5.

On October 10, 2012, K.C. went to the Children's Hospital of Alabama where she saw a pediatric gynecologist. The history of present illness from this visit states:

> She has periods that are monthly. Sometimes there are 2 weeks in between and sometimes they are a full month in between. When they do occur she does have to wear

---

[2] Because the Court did not find the recitation of facts about K.C. in the March 30, 2017 Fees Decision to be erroneous, and therefore, this decision restates the facts verbatim. See Fees Decision, 2017 WL 1476242, at *1-3.

2

> double protection on her for a few days because of the
> menorrhagia.  Her periods last for about 2 days and they
> are off for about 2 days and they come back for about 4-5
> days.

Exhibit 9 at 4.  Except as noted in the history of present illness, the doctor's review
of symptoms was "negative times 10."  Id.  The gynecologist prescribed oral
contraception to control K.C.'s monthly cycle.

According to an affidavit K.C. signed for this litigation, her health changed
on November 1, 2012 (almost four months after her receipt of the HPV
vaccination).  K.C. stated: "I began getting regular weekly headaches. Over the
next few weeks, not only did the frequency of headaches increase but I also began
to experience episodes of near black-outs where my vision became temporarily
impaired." Exhibit 1 ¶ 5.  Ms. Cottingham's attorney asserted that November 1,
2012, marked the onset of the problems the HPV vaccine allegedly caused in K.C.
Pet'r's Mot. for Attorneys' Fees and Costs, filed Oct. 26, 2016, at 5.

On November 30, 2012, K.C. returned to her pediatrician's office.  She
complained about having a fever, yellow mucous, a sore throat in the mornings,
and headaches "off and [on] all week."  The doctor diagnosed her as having "acute
sinusitis."  Exhibit 3 at 87-88.

Approximately two months later, K.C. had another appointment with her
pediatrician.  The history of present illness states that K.C.

> comes in today with 2 days of runny nose and
> congestion. Today she's had low-grade fever of 100.4,
> she has also had [a] sore throat along with runny nose
> and congestion.  Has had a headache today as well.  No
> cough, increased work of breathing or shortness of
> breath.  No vomiting or diarrhea.

Exhibit 3 at 78 (record created Jan. 31, 2013).  The doctor's assessment was
"rhinitis" and "acute viral pharyngitis."  Id. at 79.

On March 29, 2013, K.C. "fainted upon getting up this morning."  She also
had a fever and dizziness.  She vomited once.  The doctor's assessment was
"gastroenteritis" and "dehydration."  The doctor believed that K.C. was "at the

early stage of an intestinal virus." Exhibit 3 at 80-81.  March 29, 2013 is 267 days (nearly 9 months) after July 5, 2012, the date of the first HPV vaccination.

K.C. fainted again on May 23, 2013, while at a pool.  The history of present illness from her treatment after this incident states that after waking up this morning, K.C. did not have anything to eat or drink.  When at the pool with a friend, K.C. felt "very hot" and "hungry" "so she stood up quickly to go get something to eat.  She says at that point her vision became black and she felt very light headed.  Soon after she fell backwards." Exhibit 3 at 70.  The doctor thought that K.C. "was dehydrated prior to this event. [She] also [thought] laying out in the sun may have contributed."  The doctor recommended that K.C. increase her intake of fluids.  Id. at 71.

On July 25, 2013, K.C. visited the pediatric cardiology clinic of the University of Alabama-Birmingham.  The history of present illness recounts the two incidents of fainting from March and May.  In addition, K.C. "has had other episodes of dizziness and near passing out.  With all the episodes, she is standing or walking.  She does not participate in any competitive athletics.  She does participate as a majorette.  She has not had any dizziness or syncope with physical activity." Exhibit 3 at 111.  The doctor conducted various tests and determined that she had a "structurally and functionally normal heart.  This syncope/presyncope is consistent with a vasovagal etiology."  The doctor "emphasized aggressive fluid hydration." Id. at 112.

Following the July 25, 2013 visit with the pediatric cardiologist, nearly eight months passed before the next medical record.  On March 14, 2014, K.C. went to the office of her pediatrician.  Her chief complaint was listed as "cough, congestion, [sore throat], low-grade fever."  The doctor's assessment was "cough," "acute viral pharyngitis," and "acute upper respiratory infection." Exhibit 3 at 106.

K.C. again saw a pediatrician for a checkup on August 18, 2014.  The history of present illness states: "Been doing well. No concerns."  The office notes also indicate that the date of Casey's last menstruation was July 25, 2014.  They also say that an oral contraceptive was discontinued, although the date of discontinuance was not given.  At this appointment, K.C. received another dose of the hepatitis A vaccine, another dose of the meningococcal conjugate vaccine, and another dose of the HPV vaccine.  Exhibit 3 at 109-10.

Pursuant to a history given to a gynecologist in April 2015, K.C. took oral contraceptives until October or November 2014 when her prescription ran out.

4

This same history reports that K.C. had a menstrual period in December 2014, but none since that month.  Exhibit 7 at 7.  During the April 28, 2015 appointment, the gynecologist came to the impression that K.C. was suffering from "secondary amenorrhea."  The doctor also indicated that polycystic ovarian syndrome was possible.   The doctor ordered an ultrasound.  Id. at 9.

Because of problems scheduling the ultrasound, Ms. Cottingham called the office of K.C.'s pediatrician on May 14, 2015.  Ms. Cottingham was "concerned that the Gardasil series may have had something to do with the recent changes noted in [K.C.'s] menstrual cycle.  Mom is requesting that a note be made in [her] chart regarding this concern."  Exhibit 3 at 175.

The day after this May 2015 phone call, Ms. Cottingham retained her current attorney, Andrew Downing.  Pet'r's Mot. at 4.  Within a few days, a paralegal was requesting information from Ms. Cottingham to obtain medical records. Timesheets, pages 9-10.

K.C. returned to the pediatric gynecology clinic of the University of Alabama-Birmingham on July 8, 2015.  The doctor recorded that her abnormal uterine bleeding was now resolved with the use of oral contraceptives.  The doctor continued the prescription.  Exhibit 7 at 11-13.

At the law firm, a paralegal continued the process of requesting and obtaining medical records throughout the summer of 2015.  On October 16, 2015, Mr. Downing reviewed the medical records received to date.  Timesheets, page 1. Shortly thereafter, Mr. Downing and his paralegal began working on a witness statement and drafting a petition. Timesheets, pages 1, 6.

Mr. Downing submitted the petition on October 30, 2015.  He maintained in it that K.C. first experienced symptoms of a condition the HPV vaccine caused on November 1, 2012.  Therefore, in Mr. Downing's view, the 36-month statute of limitations expired on November 1, 2015.  Pet'r's Mot. at 5.

The petition was not very specific.  The introductory paragraph alleged that K.C. suffered "a severe adverse reaction."  Paragraph four of the petition references headaches that began on November 1, 2012.  Paragraphs six and seven refer to episodes of fainting in March and May 2013, respectively.  Paragraph nine asserts that K.C. began having menstrual problems in the latter part of 2013.

Over the next few months, Mr. Downing's office obtained more medical records and filed them.  On March 15, 2016, Mr. Downing submitted a statement of completion, representing that Ms. Cottingham had filed all the medical records of which she was aware.

On March 28, 2016, a status conference was held.  The Secretary stated that he was concerned about the reasonable basis for the petition.  In response, Mr. Downing stated that Ms. Cottingham would attempt to retain an expert.  See order, issued Mar. 28, 2016.

Mr. Downing called one doctor, whom Mr. Downing has retained in other Vaccine Program cases, Dr. Nemechek.  However, Dr. Nemechek did not provide a favorable opinion.  After consulting Ms. Cottingham, Mr. Downing consulted a second expert, Dr. Lee.  However, Dr. Lee also could not provide a favorable opinion.  See Pet'r's Mot. at 6-7.

On October 6, 2016, Ms. Cottingham filed a motion for a decision.  The ensuing October 13, 2016 decision dismissed Ms. Cottingham's case due to a lack of evidence.

### Procedural History Relating to Petitioner's Motions for Attorneys' Fees and Costs

Ms. Cottingham filed her first motion for attorneys' fees and costs on October 26, 2016.  She devoted one section of her accompanying brief to an argument that reasonable basis supported her petition.  Ms. Cottingham primarily contended that her attorney was required to file her petition before the expiration of the time set by the statute of limitations.  Therefore, the standard for evaluating reasonable basis should be more lenient.  Pet'r's Mot. for Attorneys' Fees and Costs, filed Oct. 26, 2016, at 7.

After this discussion about the requirements to be eligible for attorneys' fees and costs, Ms. Cottingham discussed the amount of attorneys' fees and costs that would be reasonable.  Id. at 8-21.  Ms. Cottingham concluded that a reasonable amount was $10,363.00 in attorneys' fees and $1,105.77 in costs.  Ms. Cottingham supported her request with timesheets, invoices, and a memorandum approximately 10 pages in length.  Ms. Cottingham's October 26, 2016 motion requested compensation for Mr. Downing's work through October 18, 2016, when the entitlement phase of Ms. Cottingham's case ended.  In other words, the October 26, 2016 motion did not request any fees for preparing the fee application itself.

6

The Secretary opposed the motion for attorneys' fees and costs. He argued that Ms. Cottingham's case lacked a reasonable basis. To the Secretary, the pendency of the statute of limitations does not affect the analysis of reasonable basis. Resp't's Resp., filed Nov. 14, 2016. As to the reasonable amount of attorneys' fees and costs, the Secretary did not comment.

Ms. Cottingham submitted a reply, reinforcing and repeating her arguments regarding reasonable basis. Pet'r's Reply, filed Nov. 28, 2016. Ms. Cottingham added that an attorney's leaving a potential petitioner with only a short time either to find a new attorney to represent her or to file a case pro se would be tantamount to an ethical violation. Id. at 4, citing Simmons v. Sec'y of Health & Human Servs., No. 13-825V, 2016 WL 59378528, at *3 (Fed. Cl. Spec. Mstr. Apr. 14, 2016).

Respondent submitted a sur-reply noting that the Court had granted a motion for review in Simmons. Resp't's Notice of Add'l Auth., filed Nov. 28, 2016. The Court stated: "[A] statute of limitations deadline does not excuse counsel from endeavoring to confirm that the vaccine injury alleged has occurred by producing supporting evidence." Simmons v. Sec'y of Health & Human Servs., 128 Fed. Cl. 579, 584 (2016).

The March 30, 2017 Fees Decision found that Ms. Cottingham had failed to satisfy the reasonable basis standard. Preliminarily, the Fees Decision ruled that petitioners satisfy the reasonable basis standard by presenting evidence supporting the claims set forth in the petition. The Fees Decision determined that an evidence-based standard was in accord with the language and structure of the Vaccine Act. The Fees Decision found that Ms. Cottingham had not presented sufficient evidence to establish a reasonable basis for the claims set forth in the petition. 2017 WL 1476242, at *6-11.

The Fees Decision also considered an alternative to an evidence-based standard, the "totality of the circumstances" standard. Under the totality of the circumstances standard, the Fees Decision found that Ms. Cottingham had not established the reasonable basis for any of the three claims set forth in the petition (headaches, fainting, and menstrual difficulties). The Fees Decision found that the medical records were inconsistent with the claims in the petition and that the timing was a problem. The Fees Decision also stated that Mr. Downing did not accurately assess the information available to him before he filed the petition. 2017 WL 1476242, at *11-15.

7

Following the Fees Decision, Ms. Cottingham filed a 16-page motion for reconsideration.  The motion for reconsideration argued that the Fees Decision erred in using an evidence-based standard to evaluate reasonable basis.  Ms. Cottingham's motion for reconsideration also contended that the Fees Decision failed to account for K.C.'s affidavit and the affidavit did not conflict with the medical records.

The undersigned denied the motion for reconsideration.  With respect to the proper standard by which to evaluate reasonable basis, the undersigned stated that Ms. Cottingham did not address the lack of textual support in the Vaccine Act for the totality of circumstances standard and Ms. Cottingham did not address Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375 (Fed. Cir. 1994), a case in which the Federal Circuit stated "Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorneys' fees and costs by merely having an expert state an unsupported opinion."  The undersigned also re-reviewed the material in the contemporaneously created medical records that were not consistent with K.C.'s affidavit.  The undersigned also cited cases from both judges at the Court of Federal Claims and special masters that imposed some duty on an attorney to investigate a claim before filing the claim.  The undersigned found that Mr. Downing had enough time to investigate Ms. Cottingham's claim more thoroughly.  Accordingly, the undersigned denied the motion for reconsideration.  Order, filed April 20, 2017, 2017 WL 2209904.

Ms. Cottingham filed a motion for review.  The Secretary responded.

As previously mentioned, the Court granted the motion for review.  Opinion, 2017 WL 4546579.  For each of the two reasons the Fees Decision gave for finding that there was not a reasonable basis for the claim set forth in the petition, the Court stated that the standard was not correct.  With respect to the discrepancy between the contemporaneously created medical records, the Court stated: "To interpret these medical records to vitiate any reasonable basis for the claim places too onerous a burden on counsel at the pleading stage."  2017 WL 4546579, at *7. The Court continued: "Insisting that an injured claimant's testimony precisely mesh with medical records is too exacting a standard to apply in assessing whether a claim has a reasonable basis."  Id.

The Court's ruling with respect to the temporal relationship between the vaccination and the onset of symptoms was similar.  "The Special Master's conclusion that Petitioner's counsel was required to marshal evidence and

precedent on the timing of onset of [HPV] vaccine injuries to establish a reasonable basis for filing a claim asks too much." 2017 WL 4546579, at *8. Accordingly, the Court vacated the fees decision and remanded for additional adjudication under the standard articulated in its ruling.

After the Court issued its Opinion, Ms. Cottingham filed a supplemental motion for attorneys' fees and costs. This motion captures efforts of Mr. Downing and others beginning October 21, 2016. The motion encompassed work on the October 26, 2016 motion for attorneys' fees and costs, the reply brief, the motion for reconsideration, and the motion for review. Ms. Cottingham is seeking $20,182.50 for attorneys' work in litigating the fee dispute as well as an additional $1,758.09 in costs. Pet'r's Supp'l Mot., filed Sept. 19, 2017.

The Secretary filed a short response. The Secretary stated: "In response to petitioner's application for supplemental fees, respondent respectfully maintains his position on reasonable basis as set forth in previous filings in order to preserve the arguments for a potential appeal. On the amount to be awarded in light of Judge Coster Williams' Opinion and petitioner's supplemental application for fees, respondent defers to the sound discretion of the Special Master." Resp't's Resp., filed Oct. 3, 2017.

Following an informal request from the undersigned, Ms. Cottingham submitted her General Order #9 statement on November 6, 2017, indicating that Ms. Cottingham had not incurred any costs personally. This submission makes the motions for attorneys' fees and costs ready for adjudication.

## Standards for Eligibility for Attorneys' Fees

When a petitioner, like Ms. Cottingham, does not receive compensation, "the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1). Thus, non-prevailing petitioners must establish two conditions precedent for being eligible for an award of attorneys' fees: "good faith" and "reasonable basis." Here, Ms. Cottingham acted in good faith. Thus, the critical element is "reasonable basis."

In the absence of precedential guidance from the Federal Circuit, the Court held that reasonable basis should be evaluated according to the totality of the

circumstances.  Opinion, 2017 WL 4546579, at *5-6.  This holding is binding in this case.  See Hanlon v. Sec'y of Health & Human Servs., 40 Fed. Cl. 625, 630, aff'd on non-relevant grounds, 191 F.3d 1344 (Fed. Cir. 1999).[3]

In further defining the "totality of the circumstance," the Court indicated that an affidavit from a petitioner does not need to "precisely mesh with medical records" to support a finding of reasonable basis.  The Court also indicated that special masters may not expect petitioners to support the temporal sequence with either evidence or precedent.

Under this standard, Ms. Cottingham satisfies the reasonable basis standard.  K.C.'s affidavit, alone, justifies this result.  In reaching this conclusion, the undersigned does not consider the discrepancies between the affidavit and K.C.'s medical records.  The undersigned also does not consider that the latency between the vaccination and the onset of K.C.'s headaches or fainting or menstrual difficulties.  K.C.'s affidavit, by itself, carries Ms. Cottingham's burden to establish a reasonable basis.  Ms. Cottingham is eligible for an award of attorneys' fees and costs.

### Reasonable Amount of Attorneys' Fees and Costs

The remaining issue is quantifying a reasonable amount for attorneys' fees and costs.  These are taken up separately below.

### A.    Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the

---

[3] The March 30, 2016 Fees Decision noted a case both parties cited regarding the meaning of reasonable basis, Simmons v. Sec'y of Health & Human Servs., had reached the Federal Circuit.  After the Court remanded the present case, the Federal Circuit decided Simmons on November 7, 2017, and held that "counsel may not use this impending statute of limitations deadline to establish a reasonable basis for Mr. Simmons's claim."  ___ F.3d ___, No. 2017-1405, 2017 WL 5146179, at *7 (Fed. Cir. Nov. 7, 2017).  Simmons does not affect the undersigned's analysis because the Court's October 12, 2017 Opinion remains binding.  See Strickland v. United States, 423 F.3d 1335, 1338 & n. 3 (Fed. Cir. 2005).

number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886,888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, the lodestar yields a reasonable amount of attorneys' fees. Thus, the analysis below centers on the two components of the lodestar formula — a reasonable hourly rate and a reasonable number of hours.

### 1.   Reasonable Hourly Rates

In the October 26, 2016 fee motion, the petitioner seeks attorneys' fees for work four professionals performed.[4]  These are Mr. Downing, an associate attorney Jordan Redman, paralegal Robert Cain, and paralegal Danielle Avery.  Ms. Cottingham requests that these professionals be compensated at the following hourly rates:  Mr. Downing - $350, Mr. Redman - $195, Mr. Cain - $100, and Ms. Avery - $100.  These rates have been accepted and remain reasonable.  Bourche v. Sec'y of Health & Human Servs., No. 15-232V, 2017 WL 2480936, at *4 (Fed. Cl. May 11, 2017).

For the September 19, 2017 supplemental fee motion, three professionals contributed: Mr. Downing, associate attorney Courtney Van Cott, and Ms. Avery. Ms. Cottingham requests that these professionals be compensated at the following hourly rates:  Mr. Downing - $375, Ms. Van Cott - $195, and Ms. Avery - $135. Bourche found that the proposed increase from 2016 to 2017 exceeded the rate of inflation and, therefore, compensated Mr. Downing at a rate of $365 per hour. 2017 WL 2480936, at *4.  Similarly, Ms. Cottingham has not supported the jump in the rate for paralegal Avery from $100 per hour in 2016 to $135 per hour in 2017.  The rate for Ms. Van Cott ($195 per hour) is reasonable.

### 2.   Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

---

[4] A fifth professional, associate attorney Courtney Van Cott, is identified in the initial fee motion but the timesheets do not contain any work performed by Ms. Van Cott up to this point in time.

Tasks "that a paralegal can accomplish should be billed at a paralegal's hourly rate." <u>Riggins v. Sec'y of Health & Human Servs.</u>, 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009), <u>mot. for rev. denied</u> (slip. op. Dec. 10, 2009), <u>aff'd</u>, 406 F. Appx. 479 (Fed. Cir. 2011). Tasks that are secretarial / clerical, such as scanning exhibits, mailing compact discs, and electronically filing documents, should not be charged at all. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n.10 (1989); <u>Bennett v. Dep't of Navy</u>, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); <u>Guy v. Sec'y of Health & Human Servs.</u>, 38 Fed. Cl. 403, 407-08 (1997).

Overall, the timesheets from Mr. Downing and people from his law firm are sufficiently detailed that the activity can be assessed for its reasonableness. In only a handful of instances, the attorney or paralegal charged an excessive or unreasonable amount of time on a given task.

In light of the relatively small unsupported increases in hourly rate for Mr. Downing and Ms. Avery and the few tasks for which the charge was unreasonable, a small adjustment is required. According to the United States Supreme Court, tribunals determining reasonable amounts of attorneys' fees do not have to present calculations with the precision of a "green eye-shade accountant." <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011). Consequently, to achieve the "rough justice" that the Supreme Court discussed, $500 is deducted.

## B.     Attorneys' Costs

In addition to seeking an award of attorneys' fees, Ms. Cottingham seeks an award for her attorneys' costs. The initial motion requested $1,105.77 and the supplemental motion requested $1,758.09. The total amount, $2,863.86, is adequately documented, reasonable, and awarded in full.

## <u>Conclusion</u>

Based upon the Court's interpretation of reasonable basis, Ms. Cottingham is eligible for an award of attorneys' fees and costs. A reasonable amount is **$32,909.36**.

This shall be paid as follows:

**A lump sum payment of $32,909.36, in the form of a check made payable jointly to petitioner and petitioner's attorney, Andrew D.**

12

**Downing, of Van Cott & Talamante, PLLC, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk shall enter judgment accordingly.[5]  The Clerk's Office shall also provide this decision to the presiding judge.  See Vaccine Rule 28.1(a).


**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review by a United States Court of Federal Claims judge.