# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SUSAN COTTINGHAM, on behalf of her minor child, K.C., | \* \* \* | No. 15-1291V |
| Petitioner, | \* \* | Special Master Christian J. Moran |
| v. | \* \* \* | Filed: June 20, 2018 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* \* | Attorneys' fees and costs; reasonable basis; remand |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
Ann D. Martin, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AFTER SECOND REMAND DENYING ATTORNEYS' FEES AND COSTS[1]

Susan Cottingham filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10 through 34 (2012), on October 30, 2015, on behalf of her minor daughter, K.C. However, the case was dismissed within a year of its filing. Decision, 2016 WL 6575170 (Oct. 13, 2016).

Ms. Cottingham filed a motion for an award of attorneys' fees and costs on October 26, 2016. In the intervening 20 months, judicial officers have addressed this motion four times. Most recently, the Court ordered an additional evaluation.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

After considering the evidence again, the undersigned finds that Ms. Cottingham's petition was not supported by reasonable basis. Because she has failed to meet this predicate showing, Ms. Cottingham is not eligible for an award of attorneys' fees and costs. Therefore, Ms. Cottingham's motion is denied.

## **Background**

K.C. was born in 1998. Her health through 2011 was relatively routine and overall good.

In March 2012, a Middle Creek Urgent Care facility diagnosed K.C. with mononucleosis. A week later, K.C.'s regular pediatrician saw her. K.C. stated that her throat was hurting, she felt tired, and she had headaches. The doctor diagnosed her as having a viral illness on top of the mononucleosis. Exhibit 3 at 55-56.

Before starting high school, K.C. returned to the pediatrician's office. The doctor did not record any significant health concerns. During this appointment, which occurred on July 5, 2012, K.C. received three vaccinations – the hepatitis A vaccine, the meningococcal conjugate vaccine, and the human papillomavirus (HPV) vaccine. Exhibit 3 at 99-100. Ms. Cottingham's claim rested upon the HPV vaccine.

Approximately one month later, while performing as a majorette in her school's band, K.C. twisted her right knee. The pediatrician recorded that except for the problem with her right knee, a review of symptoms was "negative." Exhibit 3 at 64. For the knee injury, K.C. went to physical therapy. Exhibit 5.

On October 10, 2012, K.C. went to the Children's Hospital of Alabama where she saw a pediatric gynecologist. The history of present illness from this visit states:

> She has periods that are monthly. Sometimes there are 2 weeks in between and sometimes they are a full month in between. When they do occur she does have to wear double protection on her for a few days because of the menorrhagia. Her periods last for about 2 days and they are off for about 2 days and they come back for about 4-5 days.

2

Exhibit 9 at 4.  Except as noted in the history of present illness, the doctor's review of symptoms was "negative times 10."  Id.  The gynecologist prescribed oral contraceptives to control K.C.'s monthly cycle.

According to an affidavit K.C. signed for this litigation, her health changed on November 1, 2012 (almost four months after her receipt of the HPV vaccination).  K.C. stated: "I began getting regular weekly headaches. Over the next few weeks, not only did the frequency of headaches increase but I also began to experience episodes of near black-outs where my vision became temporarily impaired."  Exhibit 1 ¶ 5.  Ms. Cottingham's attorney asserted that November 1, 2012, marked the onset of the problems the HPV vaccine allegedly caused in K.C.  Pet'r's Mot. for Attorneys' Fees and Costs, filed Oct. 26, 2016, at 5.

On November 30, 2012, K.C. returned to her pediatrician's office.  She complained about having a fever, yellow mucous, a sore throat in the mornings, and headaches "off and [on] all week."  The doctor diagnosed her as having "acute sinusitis."  Exhibit 3 at 87-88.

In K.C.'s affidavit, she asserts that after the November 30, 2012 visit to the pediatrician, her "headaches, low-grade fevers and near black-outs continued."  Exhibit 1 ¶ 7.  She also avers that dizziness caused her to stop during her majorette practice.  Id. at ¶ 8.  However, K.C. further asserts that she "didn't want to complain" because she thought the problems were temporary.  Id. at ¶ 7.

Approximately two months later, K.C. had another appointment with her pediatrician.  The history of present illness states that K.C.

> comes in today with 2 days of runny nose and congestion. Today she's had low-grade fever of 100.4, she has also had [a] sore throat along with runny nose and congestion. Has had a headache today as well.  No cough, increased work of breathing or shortness of breath.  No vomiting or diarrhea.

Exhibit 3 at 78 (record created Jan. 31, 2013).  The doctor's assessment was "rhinitis" and "acute viral pharyngitis."  Id. at 79.

On March 29, 2013, K.C. "fainted upon getting up this morning."  She also had a fever and dizziness.  She vomited once.  The doctor's assessment was "gastroenteritis" and "dehydration."  The doctor believed that K.C. was "at the

early stage of an intestinal virus." Exhibit 3 at 80-81.  March 29, 2013 is 267 days (nearly 9 months) after July 5, 2012, the date of the first HPV vaccination.

K.C. fainted again on May 23, 2013, while at a pool.  The history of present illness from her treatment after this incident states that after waking up this morning, K.C. did not have anything to eat or drink.  When at the pool with a friend, K.C. felt "very hot" and "hungry" "so she stood up quickly to go get something to eat.  She says at that point her vision became black and she felt very light headed.  Soon after she fell backwards." Exhibit 3 at 70.  The doctor thought that K.C. "was dehydrated prior to this event. [She] also [thought] laying out in the sun may have contributed."  The doctor recommended that K.C. increase her intake of fluids.  Id. at 71.

On July 25, 2013, K.C. visited the pediatric cardiology clinic of the University of Alabama-Birmingham.  The history of present illness recounts the two incidents of fainting from March and May.  In addition, K.C. "has had other episodes of dizziness and near passing out.  With all the episodes, she is standing or walking.  She does not participate in any competitive athletics.  She does participate as a majorette.  She has not had any dizziness or syncope with physical activity." Exhibit 3 at 111.  The doctor conducted various tests and determined that she had a "structurally and functionally normal heart.  This syncope/presyncope is consistent with a vasovagal etiology."  The doctor "emphasized aggressive fluid hydration." Id. at 112.

Following the July 25, 2013 visit with the pediatric cardiologist, nearly eight months passed before the next medical record.  On March 14, 2014, K.C. went to the office of her pediatrician.  Her chief complaint was listed as "cough, congestion, [sore throat], low-grade fever."  The doctor's assessment was "cough," "acute viral pharyngitis," and "acute upper respiratory infection." Exhibit 3 at 106.

K.C. again saw a pediatrician for a checkup on August 18, 2014.  The history of present illness states: "Been doing well. No concerns."[2]  The office notes also indicate that the date of K.C.'s last menstruation was July 25, 2014.  They also say that an oral contraceptive was discontinued, although the date of

---

[2] K.C.'s affidavit asserts that by August 18, 2014, she was still having episodes of headaches and near black-outs, but less frequently.  She avers that she did not mention the headaches and near black-outs in the visit with her pediatrician on August 18, 2014, because she was coping with them.  Exhibit 1 ¶ 16-17.

discontinuance was not given.  At this appointment, K.C. received another dose of the hepatitis A vaccine, another dose of the meningococcal conjugate vaccine, and another dose of the HPV vaccine.  Exhibit 3 at 109-10.

Pursuant to a history given to a gynecologist in April 2015, K.C. took oral contraceptives until October or November 2014 when her prescription ran out.  This same history reports that K.C. had a menstrual period in December 2014, but none since that month.  Exhibit 7 at 7.  During the April 28, 2015 appointment, the gynecologist came to the impression that K.C. was suffering from "secondary amenorrhea."  The doctor also indicated that polycystic ovarian syndrome was possible.  The doctor ordered an ultrasound.  Id. at 9.

Because of problems scheduling the ultrasound, Ms. Cottingham called the office of K.C.'s pediatrician on May 14, 2015.  Ms. Cottingham was "concerned that the Gardasil series may have had something to do with the recent changes noted in [K.C.'s] menstrual cycle.  Mom is requesting that a note be made in [her] chart regarding this concern."  Exhibit 3 at 175.

The day after this May 2015 phone call, Ms. Cottingham retained her current attorney, Andrew Downing.  Pet'r's Mot. at 4.  Within a few days, a paralegal was requesting information from Ms. Cottingham to obtain medical records.  Timesheets, pages 9-10.

K.C. returned to the pediatric gynecology clinic of the University of Alabama-Birmingham on July 8, 2015.  The doctor recorded that her abnormal uterine bleeding was now resolved with the use of oral contraceptives.  The doctor continued the prescription.  Exhibit 7 at 11-13.

At the law firm, a paralegal continued the process of requesting and obtaining medical records throughout the summer of 2015.  On October 16, 2015, Mr. Downing reviewed the medical records received to date.  Timesheets, page 1.  Shortly thereafter, Mr. Downing and his paralegal began working on a witness statement and drafting a petition. Timesheets, pages 1, 6.

Mr. Downing submitted the petition on October 30, 2015.  He maintained in it that K.C. first experienced symptoms of a condition the HPV vaccine caused on November 1, 2012.  Therefore, in Mr. Downing's view, the 36-month statute of limitations expired on November 1, 2015.  Pet'r's Mot. at 5.

The petition was not very specific.  The introductory paragraph alleged that K.C. suffered "a severe adverse reaction."  Paragraph four of the petition references headaches that began on November 1, 2012.  Paragraphs six and seven refer to episodes of fainting in March and May 2013, respectively.  Paragraph nine asserts that K.C. began having menstrual problems in the latter part of 2013.

Over the next few months, Mr. Downing's office obtained more medical records and filed them.  On March 15, 2016, Mr. Downing submitted a statement of completion, representing that Ms. Cottingham had filed all the medical records of which she was aware.

On March 28, 2016, a status conference was held.  The Secretary stated that he was concerned about the reasonable basis for the petition.  In response, Mr. Downing stated that Ms. Cottingham would attempt to retain an expert.  See order, issued Mar. 28, 2016.

Mr. Downing called one doctor, whom Mr. Downing has retained in other Vaccine Program cases, Dr. Nemechek.  However, Dr. Nemechek did not provide a favorable opinion.  After consulting Ms. Cottingham, Mr. Downing consulted a second expert, Dr. Lee.  However, Dr. Lee also could not provide a favorable opinion.  See Pet'r's Mot. at 6-7.

On October 6, 2016, Ms. Cottingham filed a motion for a decision.  The ensuing October 13, 2016 decision dismissed Ms. Cottingham's case due to a lack of evidence.

On October 26, 2016, Ms. Cottingham filed the pending motion for attorneys' fees and costs.  To support her argument regarding reasonable basis, she primarily contended that her attorney was required to file her petition before the expiration of the time set by the statute of limitations.  Therefore, the standard for evaluating reasonable basis should be more lenient.  Pet'r's Mot., filed Oct. 26, 2016, at 7.

The Secretary disagreed.  He argued that Ms. Cottingham's case lacked a reasonable basis.  To the Secretary, the pendency of the statute of limitations does not affect the analysis of reasonable basis.  Resp't's Resp., filed Nov. 14, 2016.

The undersigned found that Ms. Cottingham had not established the reasonable basis for her petition.  Cottingham I, 2017 WL 1476242 (Mar. 30, 2017).  Ms. Cottingham filed a motion for review.

The Court granted the motion for review, vacated <u>Cottingham I</u>, and remanded.  A primary reason was that <u>Cottingham I</u> imposed too high a burden, especially in a case in which the press of the expiration of the statute of limitations prompted the petitioner's attorney to file the petition quickly.  Thus, the Court ordered a new evaluation.  <u>Cottingham II</u>, 134 Fed. Cl. 567 (2017).

While Ms. Cottingham's case was on its first remand, the Federal Circuit clarified the reasonable basis standard.  <u>Simmons v. Sec'y of Health & Human Servs.</u> held that "counsel may not use this impending statute of limitations deadline to establish a reasonable basis for Mr. Simmons's claim."  875 F.3d 632, 636 (Fed. Cir. 2017).

However, <u>Simmons</u> did not affect the undersigned's evaluation because <u>Cottingham II</u> was still binding.  <u>See</u> <u>Cottingham III</u>, 2017 WL 6816709 at *6 n.3.  <u>Cottingham III</u> interpreted <u>Cottingham II</u> as indicating that Ms. Cottingham could — and did — establish the reasonable basis for her petition with K.C.'s affidavit alone.  <u>Id.</u> at *6.  Having found a reasonable basis, the undersigned then determined a reasonable amount of attorneys' fees and costs totaled $32,909.36.

This time, the Secretary filed a motion for review.  The Court again granted the motion for review.  <u>Cottingham IV</u>, 2018 WL _____.  The Court stated that <u>Cottingham II</u> "contains language that does not comport with the Federal Circuit's subsequent decision in <u>Simmons</u>."  The Court also stated that <u>Cottingham III</u> did not interpret <u>Cottingham II</u> correctly in that <u>Cottingham II</u> did not require a finding of reasonable basis based upon the affidavit alone.  Thus, the Court again remanded the matter.

## <u>Analysis</u>

<u>Simmons</u> characterizes the evaluation into whether petitioners show the "'reasonable basis *for the claim* for which the petition was brought' . . . [as] an objective inquiry."  875 F.3d at 636, quoting 42 U.S.C. § 300aa-15(e)(1) (emphasis in original).  Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence.  <u>See</u> <u>Chuisano v. Sec'y of Health & Human Servs.</u>, No. 07-452V, 2013 WL 6234660 at *12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (explaining that reasonable basis is met with evidence), <u>mot. for rev. denied</u>, 116 Fed. Cl. 276 (2014).

Here, Ms. Cottingham has not submitted sufficient evidence to support a finding that there was a reasonable basis for the claims for which the petition was brought. The petition suggests three claims: the HPV vaccination caused headaches within about four months, the HPV vaccination caused fainting roughly nine months later, and the HPV vaccination caused menstrual difficulties starting approximately 18 months later.

The evidence (medical records and affidavits) show a temporal sequence in which the various maladies occurred after the vaccination. However, to establish reasonable basis, "Temporal proximity is necessary, but not sufficient." Chuisano, 116 Fed. Cl. at 287.

The key is causation. Ms. Cottingham's petition is premised upon an assertion that the HPV vaccination caused K.C. to suffer headaches, fainting, and/or menstrual problems. Has Ms. Cottingham produced any evidence that the HPV vaccination caused any of these problems?

She has not. Ms. Cottingham has not identified any treating doctor who associated a vaccination with any medical problem. Similarly, an independent review has not located any such record.

As for an opinion from a retained expert, Ms. Cottingham did not present one. Through her attorney, she consulted two doctors. Neither Dr. Nemechek nor Dr. Lee offered an opinion that a vaccination harmed K.C.

Thus, there is no evidence to support the petition's vaguely asserted claims that the HPV vaccination caused K.C.'s headaches, fainting, and/or menstrual problems. This lack of evidence means that there is no reasonable basis for the petition.[3]

Before Simmons, Ms. Cottingham had argued that her "claim was feasible." Pet'r's Mot., filed Oct. 26, 2016, at 4. Although Ms. Cottingham did not develop this point fully in that earlier brief, it appears that she was asserting that she

_____

[3] The evidentiary bar for a petitioner to establish a reasonable basis for the claim for which the petition was brought is lower than the preponderance of the evidence standard that a petitioner must meet to receive compensation. Chuisano, 2013 WL 6234660 at *13. But, because Ms. Cottingham has not produced any medical records or medical opinions supporting the claim that the vaccination caused any harm, she does not pass even the lower threshold.

expected to retain an expert who could present an opinion that the vaccination harmed K.C.  However, what could have happened is speculative and such speculation is not consistent with the Federal Circuit's description of the reasonable basis test as "objective."  As explained above, an "objective" evaluation of the record has not revealed a medical record or a medical opinion that grounds an allegation that the HPV vaccination caused K.C. some harm.

## Conclusion

As an unsuccessful petitioner, Ms. Cottingham becomes eligible for an award of attorneys' fees and costs upon a showing that she met the statutory requirement that "there was a reasonable basis for the claim for which the petition was brought."  Here, she has not made that threshold showing.  Consequently, her motion for attorneys' fees and costs is DENIED.

The Clerk's Office shall also provide this decision to the presiding judge. See Vaccine Rule 28.1(a).

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master
